UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RANDAL CAVEY and JENNY CAVEY,

|  |  |
|---|---|
| Plaintiffs, | Case No. 13-11218 |
|  | Paul D. Borman |
| v. | United States District Judge |
| BANK OF AMERICA, N.A. SUCCESSOR | Mona K. Majzoub |
| IN INTEREST TO BAC HOME LOANS | United States Magistrate Judge |
| SERVICING, L.P. BY MERGER and |  |
| SCOTT HOPE, |  |
| Defendants. |  |

_____/

<u>OPINION AND ORDER (1) DISMISSING DEFENDANT SCOTT HOPE PURSUANT TO
FED. R. CIV. P. 21; (2) GRANTING DEFENDANT BANK OF AMERICA'S MOTION TO
DISMISS (ECF NO. 3) and (3) DISMISSING PLAINTIFF'S COMPLAINT WITH
PREJUDICE</u>

This matter is before the Court on Defendant Bank of America, N.A.'s ("BANA") Motion to Dismiss Complaint to Quiet Title and for Equitable Relief. (ECF No. 3.) Plaintiffs filed a Response (ECF No. 6) and Defendant filed a Reply (ECF No. 8). BANA also filed a Response to the Court's Order Requiring Further Support for Fraudulent Joinder Claim. (ECF No. 10.) The Court held a hearing on February 12, 2013. For the reasons that follow, the Court DISMISSES fraudulently joined Defendant Scott Hope pursuant to Fed. R. Civ. P. 21, GRANTS Defendant's Motion to Dismiss and DISMISSES Plaintiff's Complaint with prejudice.

**INTRODUCTION**

The heart of this case is Plaintiff's challenge to the validity of an Affidavit that served to correct a technical error in a Sheriff's deed granted on February 17, 2010, more than three years

1

prior to the filing of this action, foreclosing the mortgage on Plaintiff's property. There is no dispute that the original Sheriff's Deed on Mortgage Sale incorrectly referenced a six month redemption period rather than the statutorily-mandated twelve month redemption period that applied to Plaintiff's parcel of land. This error was discovered and corrected before the expiration of the six month period by an Affidavit that was recorded with the register of deeds and delivered to Plaintiffs.

Despite this correction and extension of time to redeem the Property, Plaintiffs claim that the failure to formally reform the deed "effectively clogged and/or fettered" Plaintiffs' full twelve month redemption right. It is undisputed that Plaintiffs had notice of the correct extended redemption period before the six month period had expired and yet made no effort to redeem during the remainder of the twelve month period and indeed made no effort to challenge the foreclosure sale of their Property until the filing of this action, some two years after the expiration of the extended redemption period. Neither law nor equity demands that Plaintiffs prevail.

## I.    BACKGROUND

On or about August 7, 2008, Plaintiffs entered into a mortgage loan transaction with Mac-Clair Mortgage Company ("the Lender") in the amount of $188,028.00, secured by property located at 4320 S. Duffield Rd., Lennon, MI 48449. (Compl. Ex. 2, Mortgage) ("the Mortgage"). The Mortgage was granted in favor of Mortgage Electronic Systems, Inc. ("MERS") solely as nominee for the Lender. *Id*. The Mortgage was recorded with the Genesee County Register of Deeds on August 13, 2008. *Id*. MERS assigned the Mortgage to BAC Home Loans Servicing, L.P., a predecessor in interest to Bank of America, N.A. ("BANA"),[1] on November 15, 2009. (Compl. Ex.

---

[1] BANA states that it was "incorrectly sued as Bank of America, N.A., Successor in Interest to BAC Home Loans Servicing, L.P. by Merger." (ECF No. 3, Mot. 1.)

3, Assignment of Mortgage.)  Plaintiffs defaulted on their Mortgage, foreclosure proceedings were instituted and the Property was sold to BANA at a Sheriff's sale on February 17, 2010 for $200,913.79.  (Compl. Ex. 4, Sheriff's Deed on Mortgage Sale.)  The original Sheriff's deed stated that Plaintiffs were entitled to 6 months to redeem the Property, or until August 17, 2010.  *Id*.  In fact, given the nature of the parcel of land, Plaintiffs were entitled under MCL§ 600.3240 to 12 months to redeem the Property.  (Pls.' Compl. ¶ 12.)  Recognizing that the original Deed had recited the incorrect statutory redemption period, BAC Home Loans Servicing, L.P. filed an Affidavit with the Genesee County Register of Deeds on  July 29, 2010, attesting that the statutory redemption period for the Property was 12 months and extending the last date to redeem to February 17, 2011.  *Id.*  A copy of the Affidavit was affixed to the original Deed and mailed via certified mail return receipt requested to Plaintiffs at the Property address.  (Compl. Ex. 4, Affidavit and Statement Affixed to Sheriff's Deed.)  Plaintiffs' counsel acknowledged at the hearing that Plaintiffs did receive the corrected Affidavit and were made aware that their redemption period had been extended by six months.

Plaintiffs claim that Deputy Sheriff Scott Hope (a Michigan citizen whose presence in the case defeats the Court's diversity jurisdiction if he is not found to have been fraudulently joined) was required to reform the original Sheriff's Deed itself to reflect that the redemption period had been extended.  Plaintiffs assert that the Affidavit affixed to the Deed, although filed with the Genesee County Register of Deeds and served on Plaintiffs before the expiration of the six month period, was somehow insufficient to correct the error.  (Compl. ¶ 12.)  Plaintiffs claim that the failure to institute an action to reform the Deed itself "clogged and/or fettered" Plaintiffs' twelve-month right to redeem.  (Compl. ¶ 16.)  Plaintiffs now file this action, two years after the expiration

3

of the extended redemption period, having lived in the home without paying on their mortgage for over four years, asking this Court to restart the twelve month redemption period.  For the reasons that follow, the Court GRANTS BANA's motion to dismiss because (1) Plaintiffs have asserted no colorable claim under Michigan law against Sheriff Scott Hope who is dismissed from this action pursuant to Fed. R. Civ. P. 21 and (2) Plaintiffs have failed to state a claim against BANA upon which relief can be granted.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted.  When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *DirectTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).  But the court "need not accept as true legal conclusions or unwarranted factual inferences."  *Id.* (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)).  "[L]egal conclusions masquerading as factual allegations will not suffice." *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court explained that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id.* at 555 (internal citations omitted). Dismissal is appropriate if the plaintiff has failed to offer sufficient factual allegations that make the asserted claim plausible on its face.  *Id.* at 570.  The Supreme Court clarified the concept of "plausibilty" in *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009):

4

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557 (brackets omitted).

*Id.* at 1948-50.  A plaintiff's factual allegations, while "assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *LULAC v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 127 S.Ct. at 1965).  Thus, "[t]o state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *Bredesen*, 500 F.3d at 527 (citing *Twombly*, 127 S.Ct. at 1969).  While a "*pro se* complaint . . . must be held to less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), still under even this lenient standard *pro se* plaintiffs must meet basic pleading requirements. *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004).  The leniency granted to *pro se* plaintiffs "does not require a court to conjure allegations on a litigant's behalf." *Id.* at 714 (internal quotation marks and citation omitted).

In ruling on a motion to dismiss, the Court may consider the complaint as well as (1) documents that are referenced in the plaintiff's complaint or that are central to plaintiff's claims (2) matters of which a court may take judicial notice (3) documents that are a matter of public record and (4) letters that constitute decisions of a government agency. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  *See also Greenberg v. Life Ins. Co. Of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999) (finding that documents attached to a motion to dismiss that are referred

5

to in the complaint and central to the claim are deemed to form a part of the pleadings).  Where the claims rely on the existence of a written agreement, and plaintiff fails to attach the written instrument, "the defendant may introduce the pertinent exhibit," which is then considered part of the pleadings.  *QQC, Inc. v. Hewlett-Packard Co*., 258 F. Supp. 2d 718, 721 (E.D. Mich. 2003).  "Otherwise, a plaintiff with a legally deficient claims could survive a motion to dismiss simply by failing to attach a dispositive document."  *Weiner v. Klais & Co., Inc*., 108 F.3d 86, 89 (6th Cir. 1997).

## III.    ANALYSIS

### A.    Subject Matter Jurisdiction - BANA Has Established Fraudulent Joinder and Sheriff Scott Hope is Dismissed From the Case as a Non-Diverse Dispensable Party Pursuant to Fed. R. Civ. P. 21

As an initial matter, the Court must determine whether or not it has subject matter diversity jurisdiction over this action.  Defendant Scott Hope is a Michigan citizen, as are Plaintiffs, and his presence in the case defeats this Court's diversity jurisdiction if BANA cannot sustain its burden of establishing that Sheriff Hope was fraudulently joined.  For the reasons that follow, the Court concludes that BANA has met that burden because Plaintiffs have failed to state a colorable claim against Sheriff Hope under Michigan law.  The Court therefore drops Sheriff Hope as a dispensable non-diverse party pursuant to Fed. R. Civ. P. 21.

### 1.    The standards for analyzing a claim of fraudulent joinder.

The burden of establishing federal jurisdiction, and in this case, therefore, proving fraudulent joinder, is on the removing party. *Alexander v. Electronic Data Sys. Corp*., 13 F.3d 940, 948-49 (6th Cir. 1994).  A removing defendant can establish fraudulent joinder by demonstrating that plaintiff has "no colorable claim" against the non-diverse defendant under applicable state law.  *Coyne v.*

6

*American Tobacco Co*., 183 F.3d 488, 493 (6th Cir. 1999). Plaintiff's motive in joining a non-diverse defendant is immaterial to the Court's determination. *Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C.*, 176 F.3d 904, 907 (6th Cir. 1999). Whether the matter is properly removed is based upon the claims as pled in plaintiff's complaint. *Coyne*, 183 F.3d at 493. *See also Pichler v. U.S. Steel Corp*., No. 09-10843, 2009 WL 3199698, at *3 n.1 (E.D. Mich. Sept. 30, 2009) (following Sixth Circuit precedent limiting review of plaintiff's claims in a fraudulent joinder analysis to the facts alleged in plaintiff's pleadings). All doubts as to the propriety of removal and any ambiguities in state law are resolved in favor of the party seeking remand. *Coyne*, 183 F.3d at 493.

The Sixth Circuit summarized these standards in *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428 (6th Cir. 2012):

> We review a district court's ruling on the issue of jurisdiction de novo, but the district court's factual findings are reviewed for clear error. *Coyne v. American Tobacco Co.*, 183 F.3d 488, 492 (6th Cir. 1999). "When a non-diverse party has been joined as a defendant, then in the absence of a substantial federal question the removing defendant may avoid remand only by demonstrating that the non-diverse party was fraudulently joined." *Jerome–Duncan, Inc. v. Auto–By–Tel, L.L.C.*, 176 F.3d 904, 907 (6th Cir. 1999) (citation omitted). Fraudulent joinder is "a judicially created doctrine that provides an exception to the requirement of complete diversity." *Coyne*, 183 F.3d at 493 (quoting *Triggs v. John Crump Toyota, Inc*., 154 F.3d 1284, 1287 (11th Cir. 1998) (alteration in original)). A defendant is fraudulently joined if it is "clear that there can be no recovery under the law of the state on the cause alleged or on the facts in view of the law . . ." *Alexander v. Elec. Data Sys. Corp*., 13 F.3d 940, 949 (6th Cir. 1994) (citation omitted). The relevant inquiry is whether there is "a colorable basis for predicting that a plaintiff may recover against [a defendant]." *Coyne*, 183 F.3d at 493. "The removing party bears the burden of demonstrating fraudulent joinder." *Alexander*, 13 F.3d at 949 (citation omitted).
>
> When deciding a motion to remand, including fraudulent joinder allegations, we apply a test similar to, but more lenient than, the analysis applicable to a Rule 12(b)(6) motion to dismiss. *See Walker v. Philip Morris USA, Inc*., 443 Fed. Appx. 946, 952–54 (6th Cir. 2011). As appropriate, we may "pierce the pleading" and consider summary judgment evidence, such as affidavits presented by the parties. *Id*. The court may look to material outside the pleadings for the limited purpose of determining whether there are "undisputed facts that negate the claim." *Id*. at 955–56

695 F.3d at 432-33.

This test was recently discussed in *Kent State University Bd. of Trustees v. Lexington Ins. Co.*, 512 F. App'x. 485 (6th Cir. 2013) (Table Case):

> The combination of the "colorable" standard with the requirement that all ambiguities of state law are to be resolved in favor of the non-removing party presents a significant hurdle. A defendant attempting to prove fraudulent joinder thus faces a particularly heavy burden. *See Casias,* 695 F.3d at 433 (applying a test that is "similar to, but more lenient than, the analysis applicable to a Rule 12(b)(6) motion to dismiss"); *see also Schur v. L.A. Weight Loss Ctrs., Inc*., 577 F.3d 752, 764 (7th Cir. 2009) ("A defendant faces a 'heavy burden' to demonstrate that the joinder is fraudulent, and some courts ... have suggested that the burden is even more favorable to the plaintiff than the standard that applies to a motion to dismiss under [Fed.R.Civ.P.] 12(b)(6)."); *Smallwood v. Illinois Cent. R. Co*., 385 F.3d 568, 574 (5th Cir. 2004) ("The party seeking removal bears a heavy burden of proving that the joinder of the in-state party was improper."); *Hartley v. CSX Transp*., 187 F.3d 422, 424 (4th Cir. 1999) ("The party alleging fraudulent joinder bears a heavy burden—it must show that the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor.").

512 F. App'x. at 489-90.

### 2.     Plaintiffs fail to identify a colorable claim against Sheriff Hope.

Plaintiffs claim that they are suing Sheriff Scott Hope "as a necessary defendant to reform the wrongly abridged sheriff's deed executed by him as the authorized officer pursuant to MCL 600.3232."  (ECF No. 6, Plaintiff's Answer and Brief in Support of Show Cause to Remand at 1.) Plaintiffs assert that Sheriff Hope is a necessary party to a quiet title action and an action to reform the Deed.  In support of this assertion, Plaintiffs rely solely on *Pizzo v. Michigan Dept. of Treasury*, No. 305033, 2012 WL 4039351 (Mich. Ct. App. Sept. 13, 2012).  As discussed *infra*, this unpublished decision has no relevance to the issue of whether an equitable action to reform the Deed was a necessary prerequisite to validly extend the redemption period.  The case also does not speak to the issue of whether Sheriff Hope would be a necessary party under Michigan law to an action to

reform the Deed. The court in *Pizzo* expressed no opinion whatsoever on who would be a necessary party to an equitable action for reformation.

Plaintiffs also make reference to Mich. Comp. Laws § 600.3232 in support of their argument that Sheriff Hope is a necessary party. This statutory section, as discussed *infra*, spells out duties of an officer conducting a foreclosure sale by advertisement and does not dictate that the Sheriff would be a necessary party to an action to reform a deed. Plaintiffs thus cite no authority to support the proposition that under Michigan law, Sheriff Scott Hope would be a necessary party even assuming that an action to reform the Deed would be necessary or appropriate on the facts of this case.

"In an action to reform a deed, all parties claiming an interest in the land or any part thereof, purported to have been conveyed by the instrument sought to be reformed, and whose interests will be affected by the reformation of the instrument, are necessary parties to the action." 76 C.J.S. Reformation of Instruments § 85 (2013). "Accordingly, a purchaser at a sheriff's sale is entitled to reformation, as the sheriff does not take title, and the purchaser is in privity with the predecessors in title." 66 Am. Jur. 2d Reformation of Instruments § 60 (May 2013). *See also Steele v. REO Properties Corp.*, No. 07-14479, 2009 WL 136884 (E.D. Mich. Jan. 16, 2009) (reforming a sheriff's deed that misstated the purchase price of the property without necessity of joining the sheriff as party). Sheriff Hope claims no interest in the property, title never passed to him and Plaintiffs have failed to establish that he would be a necessary party to any action, even if one was required, to reform the Deed.

Plaintiffs have not established that they have a colorable claim against Sheriff Hope under Michigan law or that he is a necessary party to this action. This is not a case where Michigan law is "unsettled" such that resolving any ambiguities in the law might favor remand. Here, Plaintiffs cite

9

no relevant Michigan law at all to support their claim that Sheriff Hope is a necessary party to this action, or even to support their claim that an action for reformation of the original Deed would be necessary or appropriate. *See* discussion *infra*. Accordingly, BANA has carried its burden and established fraudulent joinder. Sheriff Hope is dismissed from this action pursuant to Fed. R. Civ. P. 21. *See Yuille v. American Home Mtg. Servs., Inc.*, 483 F. App'x 132, 134 n. 1 (6th Cir. 2012) (finding that district court should have dismissed a non-diverse fraudulently joined party and dismissing that party pursuant to Fed. R. Civ. P. 21 as a non-diverse dispensable party). This matter is properly before the Court on the basis the diversity of citizenship of the remaining parties.

### B. Plaintiffs Fail to State a Claim Against BANA

There is no dispute in this case that the original Sheriff's Deed incorrectly advised that the redemption period for the Property was six months, and stated that the final date to redeem was August 17, 2010. There is likewise no dispute that the July 29, 2010 Affidavit noting the mistake and extending the redemption period by six months, setting forth a revised last date to redeem of February 17, 2011, was recorded with the Genesee County Register of Deeds on August 9, 2010 and mailed to Plaintiffs via certified mail on July 29, 2010 and received by them. (ECF No. 3, Def.'s Mot. Ex. D.) It is further undisputed that in the three years since their Property was sold at the Sheriff's sale on February 17, 2010, Plaintiffs have taken no action whatsoever to redeem their Property until filing this "clogging" action in February, 2013 and have made no payments to BANA on their mortgage obligation.

10

1.      **Plaintiffs fail to support their claim that the Affidavit was insufficient to extend the redemption period and have failed to state a claim that their right to redeem was "clogged" or "fettered."**

In support of their assertion that the July 29, 2010 Affidavit was insufficient to extend the redemption period, Plaintiffs rely solely on *Pizzo, supra*. This unpublished decision does not determine the issue of whether an equitable action to reform the Deed was necessary to extend the statutorily-defined redemption period in this case. In *Pizzo*, the court was called upon to review an order of the Michigan Tax Tribunal ("MTT") involving the revocation of Salvatore and Francesca Pizzo's Principal Residence Exemption ("PRE"). The MTT had concluded that neither of the Pizzos was entitled to the PRE because Salvatore Pizzo owned the property during the time frame relevant to the tax inquiry but was not its principal resident and Francesca Pizzo was the principal resident but did not own the property. 2012 WL 4039351, at *2. It was undisputed that the original deed, executed on August 14, 2007, conveyed Francesca's entire interest in the property to Salvatore. It was also undisputed that from 2004 through 2007, Francesca occupied the property as her principal residence and Salvatore did not reside there. *Id*. Thus, when a delinquent tax notice was sent on December 13, 2007, Salvatore was the owner of the property but did not live there and Francesca was the principal resident but did not own the property, thus disqualifying either individual from claiming the PRE. The Pizzos argued, however, that a March 31, 2008 quitclaim deed that conveyed the property to Salvatore and Francesca as joint tenants with rights of survivorship should have retroactive effect because it expressed the parties' actual intent at the time the 2007 deed was executed. The Pizzos argued that the 2008 deed had the legal effect of automatically reforming the 2007 deed. *Id*.

The Court held that the parties could not reform a deed simply by their subsequent actions and

further held that the Pizzos would be required to proceed by an action for reformation of the deed, which could only be conducted in a court of equity and therefore was beyond the jurisdiction of the MTT. The court noted that an action to reform a deed could lie "if, by reason of fraud, mistake or accident or surprise, an instrument does not express the true intent and meaning of the parties." *Id*. The court declined to grant the Pizzos such equitable relief and expressly declined to decide whether a self-correcting deed would be permitted to reform an original deed in the absence of ambiguity, inconsistency or legal impossibility. *Id*. at *2, n. 13.

This is not a case, like *Pizzo*, where the parties are attempting to "correct" a deed to reflect the alleged "true intent and meaning of the parties" based solely upon the conduct of the parties subsequent to execution of that deed. The case involves a technical error, the correction of which served only to reflect what the controlling statute demanded. If *Pizzo* is relevant here at all, this case falls within the factual scenario which the court in *Pizzo* expressly declined to consider - a correction that does not address an ambiguity, inconsistency or legal impossibility on the face of the deed. There is no question here of the parties' intent - the statute controls the length of the redemption period and the Affidavit seeks to correct a technical, clerical error that incorrectly stated the statutory redemption period. Not unimportantly, the correction was noted in ample time for Plaintiffs to have availed themselves of the extended period in which to take action to redeem their Property.

Apart from *Pizzo*, Plaintiffs provide no authority to support their argument that the July 29, 2010 Affidavit, recorded on August 9, 2010, extending the redemption period from six to twelve months, was insufficient to extend the redemption period. It is undisputed that Plaintiffs received notice of this correction and of the extension of the redemption period before expiration of the six month period. Moreover, the redemption period is set by statute and the Sheriff's misstatement of

the redemption period does not affect the validity of the Deed. In *United States v. Garno*, 974 F. Supp. 628 (E.D. Mich. 1997), the court found that the sheriff's failure to include any redemption date on the deed of sale did not affect the validity of the foreclosure sale:

> The fact that a sheriff's deed does not list a redemption period is not crucial to the validity of a foreclosure sale, as the foreclosure statutes are not to be construed as specifically prescribing the form of the sheriff's deed. *Reading v. Waterman*, 46 Mich. 107, 111–12, 8 N.W. 691, 692–93 (1881). Furthermore, the provision in M.C.L. § 600.3232, which requires the officer conducting the sale to endorse upon the deed when it will become operative, has been held to be merely directory in nature, not altering the legal period of redemption and not voiding the foreclosure. *Johnstone v. Scott*, 11 Mich. 232, 244 (1863); *see also Doyle v. Howard*, 16 Mich. 261, 267 (1867).

974 F. Supp. at 633. *Garno* suggests that Sheriff Hope's error did not, could not, affect the statutorily mandated period of redemption and therefore there would be no need for an action to reform the Deed.

Importantly, as discussed *infra*, Plaintiffs fail to establish that they were actually prejudiced by Sheriff Hope's mistaken identification of the correct statutory redemption period in the original Deed. Nothing prevented Plaintiffs from acting to redeem the Property either during the first six months following the foreclosure or the next six months following the filing of the corrected Affidavit.[2] There is simply no evidence of prejudice, which would be necessary in any action post-redemption to contest the validity of the foreclosure sale. Thus, not only have Plaintiffs failed to

---

[2] At the hearing on this matter, Plaintiffs' counsel mentioned to the Court for the first time that the Plaintiffs allegedly attempted to obtain refinancing of their home armed with the correcting Affidavit and were questioned by the potential lender about the expiration date on the Original Deed. There is absolutely no allegation or even a suggestion in the Plaintiffs' Complaint that Plaintiffs tried unsuccessfully to obtain refinancing of their home and Plaintiffs never moved to amend their Complaint to allege these late-breaking facts. "To state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *Bredesen*, 500 F.3d at 527. The Court will not consider any claim or legal theory based upon an alleged denial of refinancing due to the error on the Original Deed, a factual premise that was never referenced or pled in Plaintiffs' Complaint.

establish that Sheriff Hope would be a necessary party to an equitable action to reform the original Deed, they have failed to establish that an action to reform the original Deed would be necessary at all. The Court concludes that the July 29, 2010 Affidavit served to extend the redemption period to February 17, 2011.

Plaintiffs "clogging" argument asserts that the misstated redemption period resulted in a "subtle impairment" of their ability to redeem their home, thus "clogging the equity." (Pls.' Resp. 4-5.) Plaintiffs argue that only a formal reformation of the Deed would serve to correct the redemption period. As noted above, *Garno* seems to suggest otherwise and Plaintiffs cite no relevant Michigan law in support of this proposition. Plaintiffs assert, again without evidentiary support, that "nowadays institutional lenders do not re-finance prima facie expired Sheriff's Deeds." (ECF No. 7, Pls.' Resp. 5.) Plaintiffs assert that without reforming the Deed itself, the Affidavit "was really no more useful for plaintiffs than King Midas' touch was for him." (*Id*. at 5-6.) Despite this crafty mythologic reference, Plaintiffs did not identify in their Complaint, or even suggest that, any financial institutions refused to refinance their loan or refused to deal with them because of the error in the original Deed or refused to honor their rights in the Property based upon the extended redemption period established by the July 29, 2010 Affidavit. Apparently the impairment was so "subtle" as to be incapable of definition. Plaintiffs' factually vacant "clogging" argument simply fails to carry the day. A plaintiff's factual allegations, while "assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *Bredesen*, 500 F.3d at 527 (emphasis in original) (citing *Twombly*, 127 S.Ct. at 1965). Plaintiff's "clogging" claim falls far short of meeting this pleading standard. The July 29, 2010 Affidavit served to extend the redemption period to February 17, 2011, which was the last day on which Plaintiffs could have

14

redeemed the Property. They failed to do so.

**2.      Plaintiffs' post-redemption period challenge to the foreclosure sale fails.**

When the redemption period expired on February 17, 2011, BANA became vested with all right, title and interest in the Property.  It is well established under Michigan law that, absent a clear showing of fraud or irregularity in the foreclosure proceedings, and resulting prejudice, Plaintiff cannot challenge BANA's full right, title and interest in the Property.

Michigan courts have long held that a plaintiff is barred from challenging a foreclosure sale after the right to redemption has passed.  *See Piotrowski v. State Land Office Bd.*, 302 Mich. 179, 187 (1942) (holding that "plaintiffs did not avail themselves of their right to redemption in the foreclosure proceedings and at the expiration of such right . . . all plaintiffs' rights in and title to the property were extinguished.")  The fact that an action challenging a foreclosure is filed before the expiration of the redemption period does not toll the running of the redemption period and does not change this result.  *See  Overton v. Mortgage Electronic Registration Systems*, No. 284950, 2009 WL 1507342, at *1 (Mich. Ct. App. May 28, 2009) (citing *Piotrowski* and noting that once the redemption period expired, all of plaintiff's rights in and title to the property were extinguished and further holding that filing suit before the redemption period expired was insufficient to toll the redemption period).

The Sixth Circuit has recognized that Michigan law requires a strong showing of fraud or irregularity to set aside a completed foreclosure sale once the redemption period has expired and that defects under the Michigan foreclosure statute are actionable only on a showing of prejudice.  *Conlin v. Mtg. Elec. Registration Sys., Inc,* 714 F.3d 355, 360 (6th Cir. 2013) (holding that plaintiffs failed to demonstrate the requisite prejudice or fraud necessary to set aside a completed foreclosure sale once the redemption period has expired).  This high burden of proof, recognized by the Sixth Circuit

15

in *Conlin*, that is required to set aside a completed foreclosure following expiration of the redemption period, has strong roots in Michigan law. *See Piotrowski*, *supra*. Several Michigan state and federal courts have applied *Piotrowski* to bar claims by former property owners on their foreclosed properties after the period of redemption has passed, some concluding that plaintiffs lack Article III standing after the redemption period has expired and others concluding that while plaintiffs have standing to bring the claims, their claims fail on the merits. In *Conlin*, *supra*, the Sixth Circuit noted the standing/merits controversy but found it unnecessary to finally resolve the issue. *Conlin*, 714 F.3d at 359-60 ("Whether the failure to make [a showing of fraud or irregularity] is best classified as a standing issue or as a merits determination, one thing is clear: a plaintiff-mortgagor must meet this "high standard" in order to have a foreclosure set aside after the lapse of the statutory redemption period.") (Footnotes and citations omitted.)

As noted by the Sixth Circuit in *Conlin*, the only possible exception to the rule that such claims are absolutely barred post-redemption applies when the mortgagor makes a strong showing of "fraud or irregularity." "'The Michigan Supreme Court has held that it would require a strong case of fraud or irregularity, or some peculiar exigency, to warrant setting a foreclosure sale aside.'" 714 F.3d at 359 (quoting *Sweet Air Inv. Inc. v. Kenney*, 275 Mich. App. 492, 497 (2007) (quoting *United States v. Garno*, 974 F. Supp. 628, 633 (E.D. Mich. 1997)). *See also Schulthies v. Barron*, 16 Mich. App. 246, 247-48 (1969) ("The law in Michigan does not allow an equitable extension of the period to redeem from a statutory foreclosure sale in connection with a mortgage foreclosed by advertisement and posting of notice in the absence of a clear showing of fraud, or irregularity.").

Importantly, the Sixth Circuit in *Conlin* took the opportunity to reaffirm that under Michigan law, the showing of fraud or irregularity required to set aside a completed foreclosure sale after the

16

expiration of the redemption period must satisfy a very "high standard" of proof:

> Michigan's foreclosure-by-advertisement scheme was meant to, at once, impose order on the foreclosure process while still giving security and finality to purchasers of foreclosed properties. *See Mills v. Jirasek*, 255 N.W. 402, 404 (Mich. 1934) (citing *Reading v. Waterman*, 8 N.W. 691, 692 (Mich. 1881)); *see also Gordon Grossman Bldg. Co. v. Elliott*, 171 N.W.2d 441, 445 (Mich. 1969). To effectuate this interest in finality, the ability for a court to set aside a sheriff's sale has been drastically circumscribed. *See Schulthies v. Barron*, 167 N.W.2d 784, 785 (Mich. Ct. App. 1969); *see also Senters [v. Ottawa Sav. Bank, FSB*], 503 N.W.2d [639] at 643 [(Mich. 1993)]. Michigan courts have held that once the statutory redemption period lapses, they can only entertain the setting aside of a foreclosure sale where the mortgagor has made "a clear showing of fraud, or irregularity." *Schulthies*, 167 N.W.2d at 785; *see also Sweet Air Inv., Inc. v. Kenney*, 739 N.W.2d 656, 659 (Mich. Ct. App. 2007) ("The Michigan Supreme Court has held that it would require a strong case of fraud or irregularity, or some peculiar exigency, to warrant setting a foreclosure sale aside." (internal quotation marks omitted)).

714 F.3d at 359.

Not only must there be an extraordinarily strong showing of fraud or irregularity but the alleged fraud must relate to the actual foreclosure process. *Id*. at 360 ("It is further clear that not just any type of fraud will suffice. Rather, the misconduct must relate to the foreclosure procedure itself.") (quotation marks, citation and alteration omitted).

Further, the Michigan Supreme Court, in *Kim v. JP Morgan Chase Bank, N.A.*, 493 Mich. 98 (2012), clarified that a defect in the Michigan statutory foreclosure proceedings renders a foreclosure sale voidable, not void ab initio, and that such defects are actionable only upon a showing of prejudice, *i.e.* a showing that the mortgagor would have been in a better position had the defect not occurred. A foreclosure that fails to comport with Michigan statutory foreclosure laws will be voidable only if plaintiffs demonstrate that "they were prejudiced by defendant's failure to comply with MCL 600.3204." *Id*. at 115. "To demonstrate such prejudice, they must show they would have been in a better position to preserve their interests in the property absent defendant's noncompliance

17

with the statute." *Id.* at 116.  *See Conlin*, 714 F.3d at 362 (recognizing that *Kim* made clear that failures to comply with Michigan's foreclosure by advertisement statute render foreclosures voidable, not void ab initio, and noting that after *Kim*, such failures are actionable only upon a showing of prejudice, *i.e.* that plaintiffs would have been in a better position to keep the property absent the alleged defect in the foreclosure process).

In this case, Plaintiffs have failed to plausibly plead fraud or prejudice.  As discussed *infra*, Plaintiffs have failed to state a "clogging" claim and have failed to plausibly plead that the error on the original Deed prevented them from obtaining financing or from otherwise pursuing their rights to redeem.  Plaintiffs, who assert this claim more than two years after the expiration of the redemption period, having occupied the Property for over four years without making any payments to BANA, have demonstrated neither fraud nor sufficient procedural irregularity relating to the foreclosure process, and have failed even to plead prejudice.  They have not stated a plausible claim to set aside the foreclosure sale of the Property.

### 3.  Plaintiffs fail to state a claim for quiet title.

Plaintiffs assert that "Plaintiffs have properly stated a quiet title action pursuant to MCL 600.2932(1) and (5) in which Defendant Sheriff Deputy Scott Hope is a necessary party to afford complete relief inasmuch as he is the officer authorized by law - MCL 600.3232 - that executed the Sheriff's Deed and is therefore the proper person to now reform the instrument to restore to Plaintiffs the proper time in which to redeem their home - time that they have been entitled to all along." (ECF No. 6, Pls.' Resp. in Support of Show Cause 6-7.)  First, the Court notes that several unpublished opinions in this district and in the Sixth Circuit have suggested that "quiet title" is "not a separate cause of action, but rather, it is a remedy."  *Goryoka v. Quicken Loan, Inc.*, 519 F. App'x 926, 928

18

(6th Cir. 2013) (noting that district court properly dismissed plaintiff's quiet title which sought a remedy and was not a separate cause of action); *Shaya v. Countrywide Loans, Inc*., 489 F. App'x. 815, 819–20 (6th Cir. 2012) ("As the district court noted, "quiet title" is not a separate cause of action, but rather, it is a remedy."); *Steinberg v. Federal Home Loan Mtg. Corp*., 901 F. Supp. 2d 945, 954-55 (E.D. Mich. 2012) ("Although styled as a separate claim for relief, quiet title is a remedy and not a separate cause of action.") (citing *Shaya*, 489 F. App'x. at 819–20).

Even assuming that quiet title can be pleaded as separate cause of action, Plaintiffs have failed to state such a claim here. In an action seeking quiet title relief, plaintiff has the initial burden of proof, which then shifts to the defendant to prove that it has superior title in the property at issue. *Beulah Hoagland Appleton Qualified Personal Residence Trust v. Emmet County Road Com'n*, 236 Mich. App. 546 (1999). *See also Estate of Malloy v. PNC Bank*, No. 11-12922, 2012 WL 176143, at *8 (E.D. Mich. Jan. 23, 2012) ("Under Michigan law, the plaintiff has the burden of proof in an action to quiet title and must make out a prima facie case of title.") (citing *Stinebaugh v. Bristol*, 132 Mich. App. 311 (Mich. Ct. App.1984)). The elements of a prima facie case include establishing the superiority of the plaintiff's claim based upon public records. MCR 3.411. In this case, Plaintiffs, who concede that they entered into a mortgage and have not repaid the debt, have at best a possessory interest and cannot claim superior title to BANA who holds all right, title and interest in the Property following expiration of the redemption period. *See Leone v. Citigroup, Inc.*, No. 12-10597, 2012 WL 1564698, at *3 (E.D. Mich. May 2, 2012) ("Because the indebtedness has not been fully paid, the mortgage remains a valid encumbrance on the property. Thus, plaintiff cannot state a plausible claim for relief to quiet title. . . . At best, plaintiff has a possessory interest if he is living at the property. That is not sufficient to trump the valid interests of CMI and BOA. Therefore, he has not pleaded a

plausible claim for relief to quiet title."). "A Plaintiff's failure to provide [any] legal or factual justification for [his] quiet title claim other than the conclusory allegation that the foreclosure was wrongful, invalid, and voidable necessitates dismissal of his quiet title claim." *Bond v. Federal Nat'l Mtg. Ass'n*, No. 12-cv-517, 2012 WL 4754967, at *7 (W.D. Mich. Oct. 4, 2012). Plaintiffs have failed to allege a valid quiet title claim.

## IV.    CONCLUSION

For the foregoing reasons, the Court concludes that BANA has carried its burden to establish the fraudulent joinder of Sheriff Scott Hope and DISMISSES Sheriff Hope as a non-diverse dispensable party pursuant to Fed. R. Civ. P. 21. The Court further concludes that Plaintiffs' Complaint fails to state a claim upon which relief can be granted, GRANTS Defendant's BANA's Motion to Dismiss to DISMISSES Plaintiffs' Complaint.

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  March 28, 2014

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 28, 2014.

s/Deborah Tofil
Case Manager